**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) ORDER RE CLAIM CONSTRUCTION (Dkt. 280)**

I.    **INTRODUCTION**

Plaintiff NetAirus Technologies, LLC ("NetAirus" or "Plaintiff") contends that Defendant Apple, Inc. ("Apple" or "Defendant") infringes U.S. Patent No. 7,103,380 (the "'380 Patent"). That patent claims a method whereby a "handset unit [ ] configured to a personal digital assistant (PDA)" wirelessly communicates over both a local area network ("LAN") and a wide area network ("WAN"). Apple asserts two defenses: (i) the '380 Patent is invalid; and (ii) Apple's products do not infringe the patent.

On February 27, 2012, the Court granted Apple's motion for summary judgment, in part, holding that claims 1 and 3 of the '380 Patent were obvious in light of the prior art, but that genuine issues of fact remained with respect to whether claims 7 and 11 were obvious. Dkt. 206. The Court held a final pretrial conference on March 12, 2012, but elected to stay the case pending the reexamination of the '380 Patent initiated by Apple. Dkt. 255. The Patent and Trademark Office ("PTO") issued a Reexamination Certificate on October 8, 2012 that confirmed the patentability of existing claim 2 and claims 3-13 as amended. Dkt. 265. On October 9, 2012, NetAirus moved to amend its Complaint to assert additional claims and accused products. On December 5, 2012, the Court issued an Order that: (i) denied the motion to amend; (ii) clarified that NetAirus may pursue amended claims 3, 7, 9, 10, 11, and 12; (iii) set a *Markman* hearing regarding a phrase now present in all of the asserted claims as a result of the reexamination; and (iv) ordered the parties to confer with respect to whether Apple's newer iPhone products should be included in this litigation and to  present their views on that issue at the *Markman* hearing. Dkt. 279.

The disputed phrase presented for construction is "wherein said handset unit is configured to a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions." NetAirus contends that the phrase should mean, in essence, that the handset unit functions

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

as a PDA. Apple contends that the phrase should mean that the handset unit is separate from, but connected to, a PDA.

A review of the matters at issue shows that the disputed phrase is itself ambiguous. The specification does not definitively resolve the claim construction dispute, although an evaluation of its terms supports Apple's position in certain respects. The prosecution history, although less important than the claims or specification, provides strong support for NetAirus's position. The prosecution history from the original application shows that the PTO understood the term to have the meaning proposed by NetAirus. Moreover, in the prosecution history from the reexamination, the "configured to a PDA" limitation was central to the reexamination result, and both the examiner and Apple clearly understood the claim term to have the meaning advanced by NetAirus. The Court, therefore, adopts NetAirus's proposal: "wherein said handset unit is designed to, or adapted to, perform the functions of a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions."

## II.   BACKGROUND

### A.   The Patent

On April 4, 1997, Plaintiff filed a patent application that ultimately led to the issuance of the '380 Patent. The '380 Patent claims a method whereby a handheld device is wirelessly connected to both a LAN and a WAN via a triangular communication path. When prosecuting the '380 Patent, Plaintiff submitted a diagram that presents a "simplified" version of the patent's method.[1]  It effectively illustrates the claimed communication path:



---

[1] As discussed below, this "simplified" drawing would be more accurately called an "altered" drawing. It shows that the handset and PDA components are interchangeable and perhaps combined, but it is far from clear that the specification supports that view. The applicant submitted the "simplified" drawing on August 29, 2004, some seven years after the original application. Thus, the applicant had the benefit of hindsight concerning how the market and technology had developed in the interim.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

This triangular communication arrangement establishes redundant paths of communication for the handheld device. Thus, there is both a direct wireless connection between the handset and an external WAN and a wireless connection to a local area base unit or LAN that is designed to be in closer proximity to the user than the receiver/transmitter for the WAN. The patent specification indicates that this LAN base unit can be placed "in the same room or nearby room" up to a distance of "about fifty feet." '380 Patent at 8:36-46. The claims also specify that "the transmit power level of the handset unit when transmitting to the local area communication base unit is lower than when transmitting to the external wide area network . . . . " *Id.* at 13:56-65. Thus, an aspect of the invention is a handset unit that "selectively" communicates through two redundant communication paths. The handset uses a higher transmitting power when communicating with the WAN than when communicating with the LAN base unit.

### B.     The Court's Summary Judgment Ruling

Apple argued that the Newton, which it released in March 1994, was a handset that operated as a PDA, and was capable of enhanced functionality through the addition of various hardware add-ons, such as ETE, Inc.'s Communicator ("ETE Communicator") and the PCMCIA-based Dayna Roamer Card ("Dayna Card"). Order re Defendant's Motion for Summary Judgment, Dkt. No. 206 at 3-4. The ETE Communicator allowed the Newton to connect to a WAN or cellular network, and the Dayna Card and Grouper products enabled wireless connectivity to a LAN. *Id.* PCMCIA add-ons such as the Grouper products and Dayna Card could be attached to the Newton simultaneously with the ETE communicator. *Id.* This three-part configuration could have provided simultaneous wireless LAN connectivity through the Grouper or Dayna PCMCIA card and WAN or cellular network connectivity through the ETE Communicator. *Id.*

The Court's summary judgment ruling considered the claims as they existed prior to the reexamination. As to claims 1 and 3, the Court held that a layman was the person of ordinary skill in the art, and that claims 1 and 3 were invalid as obvious. *Id.* at 24-26. As to claims 7 and 11, the Court held that an electrical engineer with one year of experience was the person of ordinary skill in the art. *Id.* at 26-27. Claims 7 and 11 require, in addition to the limitations of claims 1 and 3, respectively, that the handset transmit a voice signal to and from a LAN. *Id.* at 26. Genuine issues of material fact remained regarding the interpretation of the key prior art article and the motivation to combine references as to claims 7 and 11. *Id.* at 26-27.

### C.     The Reexamination Result

As a result of the PTO's issuance of the Ex Parte Reexamination Certificate, the asserted claims now read as follows, with the disputed phrase in bold (claims 1 and 2 are not at issue but serve as the referents for the other claims):

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

1.  [cancelled] A method for handset unit communication comprising the following steps in any order:

> transmitting first data via wireless communication to a local area communication base unit a relatively short distance away;
> receiving second data via wireless communication from the local area communication base unit a relatively short distance away;
> using said handset unit to communicate, selectively, the first and second data to and from the local area communication base unit and to communicate third and fourth data to and from an external wide area network, wherein the communication of the first, second, third and fourth data are not necessarily performed simultaneously, and wherein the transmit power level of the handset unit when transmitting to the local area communication base unit is lower than when transmitting to the external wide area network; and
> wherein the first and second data include data formatted for computer e-mail.

2.  [no longer at issue] The method for handset communication as recited in claim 1, **wherein said handset unit is configured to a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions.**

3.  The method for handset communication as recited in claim 2, wherein said handset unit further comprises a cellular telephone unit.

7.  A method for handset unit communication comprising the following steps in any order:

> directly communicating bi-directional wireless voice and computer data including wireless data networking communicating data selectively to and from a local area base unit and an external wide area network;
> transmitting a first wireless radio frequency (RF) signal comprising said data selectively to said local area base unit and to the external wide area network, wherein the data is not necessarily transmitted simultaneously to the local area base unit and to the external wide area network and wherein the first wireless RF signal transmit power level transmitted to the local area base unit is lower than the power level required to transmit the signal to the external wide area network;
> receiving a second wireless RF signal comprising said data from said local area base unit;
> wherein said handset unit data includes data formatted for email; and
> **wherein said handset unit is configured to a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions**.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

9. The method for handset unit communication as recited in claim 7, wherein the handset unit is configured to communicate with said external wide area network, wherein the external wide area network is substantially the Internet.

10. The method for handset unit communication as recited in claim 7, wherein said handset unit communicates with an earset unit.

11. The method for handset unit communication as recited in claim 7, wherein said handset unit is a wireless cellular telephone unit.

12. The method for handset unit communication as recited in claim 7, wherein said handset unit is configured to send and receive e-mail via said external wide area network.

Dkt. 270-3; '380 Patent.


III.    **ANALYSIS**

   A.    **The Legal Standards**

       A patent is a fully integrated written instrument. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). A patent must "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art" to make and use it. 35 U.S.C. § 112, ¶ 1. A patent must also contain "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. Claim construction is the process of determining the meaning and scope of the patent claims. *Markman*, 52 F.3d at 976. It is a matter of law for the court, reviewed *de novo* on appeal. *Id.* at 979.

       1.    Claim Construction: The Role of The Claims

       "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal citations and quotations omitted). *See also Renishaw PLC v. Marposs Societa'per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) (claim construction "begins and ends" with the actual words of the claims). The Federal Circuit has "frequently stated that the words of a claim 'are generally given their ordinary and customary meaning[,]'" which is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

effective filing date of the patent application." *Phillips*, 415 F.3d at 1313 (internal citations and quotations omitted).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.* "In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.* "Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116).

"Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* (citation omitted). "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.* This process is referred to as "claim differentiation." *Id.* "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15. However, claim differentiation is a guide, not a rigid rule. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991).

2.    Claim Construction: The Role of the Specification

"[C]laims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003) (citations omitted). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. "The claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims." *Id.* at 1314 (quoting *Markman*, 52 F.3d at 978). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

"[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316 (citations omitted). "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.* (citations omitted).

Notwithstanding the foregoing rules, limitations from the specification must not be read into the claims. "[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F. 3d 1182, 1186-87 (Fed. Cir. 1998)). As the Federal Circuit has explained:

> [T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms. For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. That is not just because Section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.

*Phillips*, 415 F.3d at 1323 (citations omitted). The court went on to explain that:

> Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive. The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent.

*Id.*

       3.   <u>Claim Construction: The Role of the Prosecution History</u>

The words in the claim may also be interpreted in light of the prosecution history, if it is in evidence. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). "Like the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent. Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Phillips*, 415 F.3d at 1317 (citation omitted). "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* "Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

The prosecution history is part of the "intrinsic evidence." *Id.* at 1314. As such, "[i]n connection with construing claims, [the Federal Circuit is] free to examine the prosecution history on appeal even where the trial court erroneously fails to consider it." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1581 (Fed. Cir. 1991).

The prosecution history of a reexamination is relevant in the same manner as the prosecution history of an original examination. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 867-69 (Fed. Cir. 2004). However, statements made by the patent owner in reexamination during co-pending litigation may be due little weight. *Mondis Tech., Ltd. v. Hon Hai Precision Indus. Co. Ltds.*, 2:07-CV-565-TJW-CE, 2011 WL 245507, *31 (E.D. Tex. Jan. 24, 2011).

4.      The Claim Definiteness Requirement

Patent claims must "particularly point [ ] out and distinctly claim [ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. Whether a patent claim is invalid for failing to meet this definiteness requirement is a question of law subject to *de novo* review. *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1350 (Fed. Cir. 2010). The definiteness requirement "ensure[s] that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed Cir. 2007) (citations omitted). When a claim is "not amenable to construction or [is] insolubly ambiguous" it is indefinite. *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). However, a claim is not indefinite merely because it poses a difficult issue of claim construction. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Rather, "if the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, [the Federal Circuit has] held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." *Id.* at 1375.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

5.      The Written Description Requirement

35 U.S.C. § 112, ¶ 1 provides a written description requirement. It "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Compliance with the written description requirement is a question of fact. *Id.* "[T]he written description requirement does not demand either examples or an actual reduction to practice; a constructive reduction to practice that in a definite way identifies the claimed invention can satisfy the written description requirement." *Id.* at 1352 (citing *Falko–Gunter Falkner v. Inglis,* 448 F.3d 1357, 1366–67 (Fed. Cir. 2006)). "[A]ctual 'possession' or reduction to practice outside of the specification is not enough. Rather . . . the specification itself [ ] must demonstrate possession." *Ariad*, 598 F.3d at 1352.

**B.      The Parties' Positions**

The disputed phrase presented for construction is "wherein said handset unit is configured to a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions." As noted, NetAirus argues that the phrase should be interpreted as follows: "wherein said handset unit is designed to, or adapted to, perform the functions of a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions." Dkt. 280 at 1. Apple responds with the argument that the phrase means "that the handset must be connected to a PDA." Dkt. 281 at 1.

**C.      Discussion**

1.      The Words of the Claims Themselves Are Ambiguous

Standing alone, the disputed phrase could mean either that the handset is a PDA, which is the position of NetAirus, or that it is connected to or in communication with a PDA, as Apple contends. NetAirus argues that the Federal Circuit has held that "configured to" is synonymous with "adapted to." Dkt. 280 at 2. But, the case NetAirus cites to support this position considered whether "adapted to" in the phrase "magnetic members adapted to extend across respective side portions of a primary spectacle frame" meant something that was specifically designed to accomplish a specified objective, or whether it meant merely something that could be made to serve the objective. *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348-49 (Fed. Cir. 2012). That does not address the claim construction question that is presented in the instant case.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

NetAirus argues that district courts in other cases have construed "configured to" to mean "designed for or adapted to perform." Dkt. 280 at 1-2. An examination of those cases, however, reveals that they are not on point because the additional words of the claim terms in those cases did not present the same ambiguity as "configured to a PDA." Instead, the disputed terms were "being configured to operate with" and "configured to receive." *Sipco LLC v. Toro Co.*, No. 2:08-CV-505, 2009 U.S. Dist. LEXIS 10312 (E.D. Pa. Feb. 10, 2009); *Wistron Corp. v. Samsung Elecs. Co.*, No. C07-4748, 2008 U.S. Dist. LEXIS 99052 (N.D. Cal. Nov. 25, 2008); *Cellport Sys. v. Peiker Acustic GmbH & Co. KG*, 847 F. Supp. 2d 1293 (D. Colo. 2012); *Nance v. Smith*, No. 1:09CV1536, 2011 U.S. Dist. LEXIS 13688 (N.D. Ohio Feb. 11, 2011). NetAirus also cites *Sta-Rite Indus., LLC v. ITT Corp.*, 682 F. Supp. 2d 738, 753 (E.D. Tex. 2010), in which the parties disputed whether the term "adapted to" meant "having the capacity to" as opposed to "uniquely tailored." The same question -- intended design as opposed to mere suitability -- was also at issue in *Boston Scientific Corp. v. Cordis Corp.*, C 02-01474 JW, 2006 WL 3782840 (N.D. Cal. Dec. 20, 2006).

The question presented in this case is different. Thus, it is whether, **in the context of the '380 Patent**, "configured to" means something like "configured to operate as," or instead "configured to connect to." The cases on which NetAirus relies do not answer this question.

NetAirus argues that "configured to" should mean the same thing in every claim in which it appears. Although claim terms are normally used consistently, *see Phillips*, 415 F.3d at 1314, NetAirus's argument is unpersuasive here for two reasons. First, the meaning advanced by NetAirus does not make sense in all of the claims identified by NetAirus as ones in which the phrase is used consistently. For example, substituting NetAirus's construction into claim 6 would yield "designed for or adapted to **perform function** as a hands free speakerphone." Second, the Court is construing a longer phrase than "configured to." And, it is the balance of the phrase, in conjunction with the words "configured to," that creates the ambiguity. NetAirus cites the language of other claims, including claim 6 ("configured to function as a hands free speakerphone") and claim 9 ("configured to communicate with said external wide area network"). The use of "configured to" in those two claims illustrates the importance of other words in the claim phrase. If the disputed phrase said "configured to function as a PDA," paralleling claim 6, then NetAirus would be right. If it said "configured to communicate with a PDA," paralleling claim 9, then Apple would be right. Instead, the disputed phrase includes the less clear "configured to a PDA." In *Aspex* and *Sta-Rite*, two of the cases cited by NetAirus, the context of the use of the term "configured to" in the claims at issue determined the meaning of those words. Here too, the meaning of "configured to" cannot be determined out of context.

Apple argues that it is clear that "to" in the disputed phrase is a preposition, and is not forming the infinitive form of a verb, as in claims 6 and 9. Apple is correct that the word "to" does not form an infinitive verb in the disputed phrase, but Apple's argument does not address what "configured to" means when it is not followed by a verb. Apple says it must mean "connected to." But has not

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

convincingly explained why, if the words are changed, the second instead of the first should not be modified. This would yield "configured as" rather than "connected to." "[P]roper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation." *Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) (quoting *Hockerson–Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999)).

NetAirus argues that the preamble to the claims ("A method for handset unit communication comprising the following steps in any order") is a limitation of the invention because it is necessary to give life, meaning, and vitality to the claim. NetAirus then argues that treating the preamble as a limitation makes clear that the claim does not describe a separate PDA with handset unit communication functions. *Dkt.* 288 at 9. This argument is both vague and apparently premised on an entirely mistaken foundation. The preamble states that the claim is "a method of handset communication." The handset can communicate whether or not it is separate from the PDA. The specification very clearly shows the handset communicating with a separate PDA or notebook computer, and with an external network. *See, e.g.*, '380 Patent, Fig. 2.

For these reasons, the language of the claims themselves merely confirms that this disputed phrase requires construction. When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). If "the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained by one of ordinary skill in the art from the language used, a court must look to the specification and file history to define the ambiguous term in the first instance." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1343 (Fed. Cir. 2001) (citation omitted).

2.    The Specification Supports Apple's Construction

The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Despite the specification's central role, less than a page of the voluminous briefs filed by NetAirus address the issue. *See* Dkt. 280 at 5. Perhaps that is because there is little support for NetAirus's construction in the specification. NetAirus points to Figure 8 and column 13, lines 6-9 and 23-28. Dkt. 280 at 5. But those portions of the specification appear to be directed to the base computing unit, not the handset. Indeed, the portion of the specification cited by NetAirus states:

Many types of computer application programs may be executed **by the computer system**. For example, one or more telephony programs 84, office/personal productivity programs 86, electronic mail or voice mail 88, and Internet/Web browsing programs 90 may be used. Other PDA, PC, or workstation programs may also be executed.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

Dkt. 280 at 5 (quoting '380 Patent 13:23-28) (emphasis added). Thus, it is the computer system, not the handset, which the specification describes as running the personal productivity programs that NetAirus seeks to ascribe to the handset. NetAirus asserts that the computer programs are in the handset unit, but provides no citation to support that contention. *Id.*

The specification treats the **PDA** and **computer** as interchangeable in a number of places, but does not state that the **PDA** and **handset** are interchangeable. As Apple notes, the specification's Summary of the Invention only treats the handset and computer as interchangeable:

> this Invention involves hardware and program software to control cellular or PCS communications combined with a lightweight mobile **notebook or PDA like unit**. The unit or system would act as a computing platform and base communication relay station. **The system or unit may then relay voice and data to/from a handset unit** or earset unit, where the base unit relays this voice and data information to/from a wide area communication network.

Apple's Opening Br., Dkt. 281 at 8 (quoting '380 Patent 2:59-67). The '380 Patent's figures also show that the PDA and notebook computer are interchangeable components of the system. As described in the specification, "FIG. 5 shows a **PDA like unit** with a roughly transparent cover half. FIG. 6(a) shows a **notebook or PDA** in a partial open state. FIG. 6(b) shows the **notebook or PDA** in a reversed open state." '380 Patent 3:40-44. Those figures are reproduced here:



FIG. 5     FIG. 6A     FIG. 6B

Apple also notes that the distinction between the "handset" and "PDA," in the components illustrated in Figure 2 (reproduced below). Thus, the '380 Patent specification identifies a handset separate from, and connected to, the computer system (i.e., notebook or PDA). *Id.* It first describes "a wireless handset 14, such as a cellular telephone transceiver," and then explains, "[t]he cellular handset

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

is [sic] shown in FIG. 2 may be connected to the computer system by an optional electrical cable 26." *Id.* (quoting '380 Patent 5:55-56, 6:10-12). "The advantage of this later embodiment is that the telephone 14 and computer system could be operated independently." *Id.* at 9-10.



*FIG. 2*

In further describing the invention with reference to Figures 3(a) and 3(b) (reproduced below), the '380 patent specification describes "another embodiment of the invention having a base unit or notebook computer system 100, a handset unit 14 and an earset 34." *Id.* at 6:63-65. With further reference to Figure 3, "[a]lthough the base unit 100 can be a self-contained unit, it may work with other optional attachments, such as a wireless cellular-like handset 14." *Id.* at 10. The separateness of the handset and notebook/PDA is further confirmed by the depiction of the handset alone in Figure 3(c). *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |



Figure 3

Thus, while the specification refers to the "notebook or PDA" it does not refer to the "handset or PDA."

NetAirus counters that Apple's use of the specification's figures is misleading because the patent in suit is one of three divisional applications that came from the same application. Consequently, it contends that some of the drawings may relate to embodiments not even covered by the claims of the patent in suit. Dkt. 288 at 7, Ditzik Decl. ¶ 3. It is possible that some of the drawings may relate to embodiments not covered by the claims at issue, but NetAirus has not pointed to any drawings in the specification that support its construction.

Of course, the Court should not import limitations from the specification into the claims, *Phillips*, 415 F.3d at 1323 and even if a patent describes only a single embodiment, the claims of the patent usually are not construed as being limited to that embodiment. *Id.* at 1323. And, although the specification can show that the patentee disavowed an interpretation, *id.*, the '380 Patent's specification does not appear to disavow the construction that NetAirus now advances. For these reasons, the absence of a handset/PDA embodiment is not fatal to NetAirus's construction, although it does weigh in favor of Apple's interpretation, and poses a potential written description invalidity issue if NetAirus's construction is adopted.

3.    The Prosecution History Strongly Supports NetAirus's Construction

The question of whether the specification supported a "handset as PDA" claim was considered repeatedly in the prosecution history. The PTO decided that the specification did support the claim. Although that determination is not binding on a district court, "the decision of the Patent and Trademark

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

Office with respect to patentability is accorded deference in district court litigation, deference that takes the form of the presumption of validity that is accorded to issued patents under 35 U.S.C. § 282." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1329 (Fed. Cir. 2000) (holding that district court properly found, contrary to the PTO, a failure to meet the written description requirement). That presumption can be overcome by clear and convincing evidence. *Id.* Further, although the PTO's claim construction -- a legal question -- is reviewed without deference, *In re Baker Hughes*, 215 F.3d 1297, 1301 (Fed. Cir. 2000), whether the specification provides written description for a handset configured to be a PDA is a question of fact. *Ariad*, 598 F.3d at 1351.

a)      **The Original Prosecution History**

The following summarizes the evolution of the claim language at issue and the PTO's treatment of the claims during prosecution.

(a)      Rejection Number 1

Claim language that eventually evolved into the disputed phrase through repeated amendment started in the prosecution history as claim 23. On March 2, 2001, the applicant amended claim 23 to read "[a] method of controlling a computer-display handset unit as recited in Claim 14, in which said portable hand held computer-display handset unit is primarily a personal digital assistant device. Dkt. 288, Roth Decl. Ex. B at 21. On June 6, 2001, the examiner rejected claim 23 as obvious, noting that a prior art reference "discloses a technique for controlling a computer-display handset, or hand held unit, which can be in the form of a PDA or cellular phone unit as recited in claims 23-24 . . . ." Dkt. 288, Roth Decl. Ex. C. at 34.

(b)      Rejection Number 2

On October 15, 2001, the patentee amended claim 23 to read as follows: "A method of controlling a computer-display handset unit as recited in claim 14, in which said computer-display handset unit is primarily a personal digital assistant," and argued that the obviousness rejection was incorrect because the prior art did not suggest all the steps of claim 14. Dkt. 288, Roth Decl. Ex. D at 40, 44-45. The applicant's argument to overcome the obviousness rejection was not focused on the PDA-as-handset limitation.

On January 28, 2002, the examiner again rejected claim 23, this time based on a failure to meet the written description requirement. Thus, the examiner found that "the instant specification fails to provide support for a 'computer-display handset unit,' but instead discloses a computer system, comprising a flat panel display a assembly (2) and wireless handset (14)" and that "[t]he specification fails to provide for . . . the 'handset' unit being 'primarily a personal digital assistant.'" Dkt. 288, Roth

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

Decl. Ex. E at 55. The examiner also rejected claim 23 as being anticipated by the Babitch prior art reference. *Id.* at 59.

(c)      Rejection Number 3

The applicant responded on February 20, 2002, arguing that the examiner might have been confused by the term "computer display handset unit." Dkt. 288, Roth Decl. Ex. F at 71-74. As a result, the applicant changed the term to "wireless handset," and argued that:

> The specification teach [sic] microprocessors in the base unit, wireless handset or a PDA. The specification and drawing teach the wireless handset may be also [sic] PDA. Thus, specification teaches [sic] that the wireless handset can have PDA functions in addition to handset functions.

*Id.* at 74. As to the anticipation rejection, the applicant argued that the Babitch reference did not contain a wireless handset. *Id.* at 76. The applicant further argued that:

> Babitch's palmtop is not exactly the same as Applicant's handset/PDA. A two component handset plus palmtop combination is <u>not the same</u> as a single integrated wireless handset/PDA unit. Babitch's elements are <u>not united in the same way</u> as Applicant's claims. . . . As to Claim **23**, Babitch only teaches a laptop or palm top with a separate handset, not a PDA.

*Id.* at 76 (emphasis in original).

These positions did not convince the examiner. On June 19, 2002, the examiner rejected claim 23, reasoning that the "specification fails to disclose that the 'handset unit' to primarily be a 'personal digital assistant device,' but instead provides for the base to be a PDA." Dkt. 288, Roth Decl. Ex. G at 93.

(d)      Rejection Number 4

On July 28, 2002, the applicant responded with an argument that the "[a]pplicant uses the term PDA and handset to refer to the same class of handheld products, used for similar purposes having the same or similar control." Dkt. 288, Roth Decl. Ex. H at 108. And, the applicant argued that:

> Regarding claim 23, Examiner states specification [sic] fails to show handset to be primarily a PDA. However, as discussed above, the following quote from the specification clearly teaches this equivalence. "Another object of this invention involves

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

hardware and program software to control cellular or PCS communications, combined with a light weight . . . . . PDA like unit."

*Id.* at 110. The applicant's citation was incomplete and, therefore, neither persuasive nor appropriate. A more appropriate quotation is:

> Another object of this Invention involves hardware and program software to control cellular or PCS communications, combined with a light weight **mobile notebook or PDA** like unit. The unit or system would act as a computing platform and base communications relay station. The **system or unit** may then relay voice and data **to/from a 65 handset unit or earset** unit, where the base unit relays this voice and data information to/from a wide area communication network.

'380 Patent 2:59-67 (emphasis added). This language is best interpreted as a statement that the notebook or PDA serves as the base station, and that the base station relays voice and data to the handset. It does not appear to say that the PDA is the handset.

The examiner replied with an October 8, 2002 Office Action that neither party has placed into evidence, but which apparently maintained the rejection of claim 23. Dkt. 288, Roth Decl. Ex. I at 126.

(e)     Rejection Number 5

In response, the applicant submitted an amendment on December 23, 2002 that, inter alia, canceled claim 23, and added claim 56. *Id.* Claim 56 read as follows: "A method for handset unit communication as recited in Claim 54, in which said handset unit is used as a personal digital assistant (PDA)."  Dkt. 281, Scarsi Decl. Ex. C at 25. On April 4, 2003, the examiner rejected the claim for failure to meet the written description requirement of 35 U.S.C. § 112, ¶ 1, finding that "the instant specification fails to provide for a handset unit that performs the claimed steps to also be used as a PDA." Dkt. 281, Scarsi Decl. Ex. F at 55.

(f)     Rejection Number 6

In its May 2, 2003 response, the applicant argued that the specification did teach a handset unit that performs steps to also be a PDA. Dkt. 288, Roth Decl. Ex. K. The applicant argued that "there is a teaching for a handset unit that performs steps to also be a PDA. As evidence [sic] in: 'PDAs are small handheld units with a small LCD display, small key pad and touch pen. PDAs are designed to be placed in one's pocket or purse for maximum portability.'" *Id.* at 154. The applicant then linked that statement to a description of program control that appears in a later portion of the specification. *Id.* (citing what is now '380 Patent 13:12-22, which does not seem to reference a PDA or equate it to a

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

handset). That same response amended claim 56 to read as follows: "A method for handset unit communication recited in Claim 54, in which said handset unit steps are adapted to is used as a personal digital assistant (PDA) functions in addition to handset communication functions." *Id.* at 150.

The examiner responded with an Advisory Action on May 28, 2003, which neither party has placed into evidence, but which apparently did not allow claim 56 as drafted. Dkt. 288, Roth Decl. Ex. L at 164.

(g)    Rejection Number 7

On June 10, 2003, the applicant amended claim 56 to read as follows: "A method for handset unit communication as recited in claim 54, in which said handset unit is used as a personal digital assistant (PDA) having functions in addition to handset communication functions." *Id.* at 165. Although the submission did not clearly identify this change, the amendment removed the "adapted to" language that was introduced in the prior amendment and reintroduced the previous "is used as" language in its place.

The examiner responded with an office action on July 3, 2003, which stated that the proposed amendments would not be entered because they raised issues that would require further consideration or search, but that the applicant had overcome the 35 U.S.C. § 112, ¶ 1 written description issue with regard to, inter alia, claim 56. Dkt. 288, Roth Decl. Ex. M at 173. Thus, the examiner believed, for the first time, that there was support in the specification for the claim as now phrased. Nonetheless, the claims stood rejected. *Id.*

(h)    Rejection Number 8

The applicant apparently then filed a request for continued examination on July 4, 2003, which the parties have not placed into the record. Dkt. 288, Roth Decl. Ex. N at 178. On September 30, 2003, the examiner responded with a rejection of, inter alia, claim 56, both as anticipated by a new prior art reference, and because "claims 56 [and others] are considered only to be intended uses and fail to further patentably limit the claims." *Id.* at 181.

The examiner did not elaborate, but it appears that he was referring to the rule that "[a] claim containing a 'recitation with respect to the manner in which a claimed apparatus is intended to be employed does not differentiate the claimed apparatus from a prior art apparatus' if the prior art apparatus teaches all the structural limitations of the claim." Manual of Patent Examining Procedure § 2114 (quoting *Ex parte Masham*, 2 U.S.P.Q. 2d 1647 (Bd. Pat. App. & Inter. 1987)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

This is important. It shows that, when the examiner wrote on July 3, 2003 that the applicant had overcome the written description requirement, the examiner did not necessarily consider the "intended use" portion of the claim to be a structural element. Thus, it appears that, when the examiner found written description in the specification for claim 56, it believed the "used as a PDA" clause irrelevant to patentability, and may have only been focused on the elements also present in claim 54, which did not include the PDA limitation.

(i)      Rejection Number 9

In response to the examiner's rejection, the patentee amended claim 56 to read as follows: "A method for handset unit communication recited in Claim 54, in which said handset unit is <u>configured to</u> <s>used as</s> a personal digital assistant (PDA) having functions in addition to <u>typical</u> handset communication functions." Dkt. 288, Roth Decl. Ex. O at 186. The other claims were similarly amended to remove the words "used as." *Id.* The applicant also argued the anticipation rejection. *Id.* at 189-191. It appears that this change was intended to make the PDA limitation structural rather than a mere intended use, and there is no indication that the amendment was intended, as Apple claims, to change the meaning to require that the handset merely be connected to a PDA.

A new examiner was then appointed to the file. The new examiner issued an Office Action on August 12, 2004. Dkt. 288, Roth Decl. Ex. P. Now that the claim again clearly recited a PDA structural limitation rather than a non-limiting intended use, the examiner again rejected claim 56 on the basis that the specification did not "disclose a handset configured to a PDA that communicates wirelessly with a base unit. The PDA is mentioned interchangeably with a notebook computer, not a handset." *Id.* at 195.

(j)      Allowance

The applicant submitted a response on August 29, 2004. Dkt. 288, Roth Decl. Ex. Q. In it, the applicant repeated its arguments from May 2, 2003.[2] *Id.* at 207. The applicant also submitted its "redrawn/simplified Fig. 7," which presents a box labeled "Handset/PDA Unit." No such label appears in the actual specification.

---

[2] These are discussed above under "Rejection Number 6".

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |



On September 6, 2005, the examiner conducted a telephonic interview, in which the applicant and examiner agreed to minor language changes to the claim: "[A] The method for handset unit communication as recited in [Claim] claim 54, [in which] wherein said handset unit is configured to a personal digital assistant (PDA) having PDA functions in addition to [typical] handset unit communication functions." Dkt. 288, Roth Decl. Ex. R. at 218.

Apple argues that the prosecution history demonstrates that NetAirus decided to forgo claiming a handset that operated as a PDA because in response to repeated rejections, it changed "used as" language in the claim to "configured to." Dkt. 281 at 11. Apple's argument is unpersuasive. It is true that NetAirus tried to claim a handset "used as" a PDA. But, according to Apple, the PTO based its rejection on prior art, and the rejection for "merely describing an unpatentable use of the invention" was just an invocation of the doctrine that reciting an invention's use does not distinguish it from the prior art. *See In re Pearson*, 494 F.2d 1399, 1403 (C.C.P.A. 1974) (claim terms that "merely set forth the intended use for . . . an otherwise old composition . . . do not differentiate the claimed composition from those known to the prior art.)

Also unconvincing is Apple's explanation is that NetAirus merely changed the claim language from an intended use to a structural limitation. This position supports NetAirus's understanding: The claim was rephrased from use to structure, but presumably was intended to convey the same idea -- the handset unit itself is the PDA.

The extensive back-and-forth between the examiners and the applicant makes clear that both the applicant and the PTO consistently understood the claim to refer to a handset unit that was -- or was used as -- a PDA, as NetAirus argues, rather than a handset that merely is connected to a PDA, as Apple argues.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

b)      **The Reexamination Prosecution History**

In the reexamination, the PTO, the applicant, and the third-party requestor (Apple) all clearly understood the claim term to mean a handset that **was** a PDA. District courts "should monitor [reexamination] proceedings before the PTO to ascertain whether its construction of any of the claims has been impacted by further action at the PTO or any subsequent proceedings." *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008). Statements made by the patentee to the PTO during co-pending litigation raise a particularly high risk of being self-serving, and should be accorded little, if any, weight.  *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270 (Fed. Cir. 1986); *Mondis Tech., Ltd. v. Hon Hai Precision Indus. Co. Ltds.,* 2011 WL 245507, *31 (E.D. Tex. Jan. 24, 2011) ("statements made in reexamination merely months before Plaintiff filed its claim construction brief . . . should be given little, if any, weight."). But here, wholly apart from NetAirus's statements, it appears that Apple and the PTO both applied NetAirus's construction, at least implicitly.

In its reexamination request submitted on August 29, 2011, Apple argued that claim 2, which included the "configured to a PDA" limitation, was obvious in light of an article about the use of the Apple Newton PDA in connection with the ETE communicator:

> The Newton is "one of the most versatile PDAs available[.]" Iellimo article at 1. The Newton also discloses features that include "a calendar, to-do list, a contact manager and an electronic note pad[.]" Iellimo article at 2. When the Newton is connected to the ETE Communicator it has "a wide range of communications capabilities, transforming the Newton into a mobile communication and navigation system." ETE at 1.

Dkt. 300, Roth Decl. Ex. A. at 24. Thus, Apple argued that the PDA was the handset, not that the PDA was connected to the handset. Apple never argued that the handset unit in its proposed prior art combination was "connected to a PDA," nor could it have done so because the handset's principal component was itself the Newton PDA. Apple made a similar argument as to the Moore reference: Apple stated that it disclosed a handset unit that functioned as a PDA that could be combined with other components to communicate with a WAN and a base unit for a LAN. Dkt. 300 at 4.

On July 9, 2012, the patent owner submitted a supplemental response to an office action rejecting the claims under consideration. Dkt. 300, Roth Decl. Ex. E. In addressing an obviousness rejection over two prior art references, the patent owner wrote that it, "respectfully suggests that [the references] do not disclose a handset that is configured to be a personal digital assistant (PDA)." Dkt. 301, Scarsi Decl. Ex. B at 7. Thus, the patent owner argued that its handset configured to be a PDA was different from the prior art, in which there was no combination handset/PDA.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

On July 19, 2012, the PTO issued an action confirming the patentability of claims 2-6, noting that "the submitted amendment is sufficient to overcome the prior art rejections of claim 2-6. An amendment to claim 7 setting forth the same patentable subject matter as confirmed claim 2 would render claim 7 patentable." Reexamination No. 90/011,882, Ex Parte Reexamination Advisory Action at 4, publicly available through the USPTO's PAIR system. The amendment did not change the "configured to a PDA" language.

On August 2, 2012, the Patent Owner responded to the PTO's suggestion by amending claim 7 to include the limitation of claim 2. Dkt. 300, Roth Decl. Ex. E at 3.

On August 22, 2012, the PTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate confirming the patentability of claims 2-13. Dkt. 300, Roth Decl. Ex. C. The examiner provided a statement of reasons for patentability and/or confirmation of the claims found patentable in the reexamination proceeding. In explaining why the cited prior art references did not render claim 2 obvious, the examiner stated that the references failed to teach the claimed features of "said handset unit is configured to a personal digital assistant (PDA) having PDA functions in addition to handset unit communication functions," *i.e.,* the precise claim phrase the Court is now construing. *Id.* at 4. The examiner stated that the references "fail to teach a PDA as claimed. **Each of the cited references disclose handset units that do not provide PDA functionality**." *Id.* (emphasis added).

These steps in the process lead to the conclusion that the examiner's reasons for allowance relied on the claim construction advanced here by NetAirus. The examiner believed the claims to be patentable only because they called for a handset unit that provides PDA functionality. Although Apple argues that the claims are invalid if NetAirus's construction is adopted, the PTO expressly found that NetAirus's construction was the key to patentability. An examiner's reasons for allowance can be considered in claim construction analysis. *Biogen, Inc. v. Berlex Labs.*, 318 F.3d 1132, 1139 (Fed. Cir. 2003).[3] The PTO's claim construction is reviewed de novo. *Baker Hughes*, 215 F.3d at 1301. But, the prosecution history can provide evidence of how a person of ordinary skill in the art understood the claim terms. "The patent examiner  . . . [is] deemed to have experience in the field of the invention" and

---

[3] 37 CFR § 1.104(e) states "Reasons for allowance. If the examiner believes that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning. The reasons shall be incorporated into an Office action rejecting other claims of the application or patent under reexamination or be the subject of a separate communication to the applicant or patent owner. The applicant or patent owner may file a statement commenting on the reasons for allowance within such time as may be specified by the examiner. Failure by the examiner to respond to any statement commenting on reasons for allowance does not give rise to any implication."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|----------|------------------------|------|-------------------|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

is presumed to act from the viewpoint of one of ordinary skill in the art. *In re Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002). Because an examiner in reexamination can be considered one of ordinary skill in the art, his or her construction of the asserted claims carries significant weight. *Id.*; *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("Statements about a claim term made by an examiner during prosecution of an application may be evidence of how one of skill in the art understood the term at the time the application was filed.")

Apple argues that the reexamination has little relevance to the Court's construction because during the pendency of the reexamination, NetAirus, but not Apple, had the opportunity to file additional submissions with the PTO. Dkt. 301 at 1. This argument ignores a significant fact: The one document that Apple filed in the reexamination -- its initial request for reexamination -- appears to use "configured to a PDA" in a manner consistent with NetAirus's construction. Apple acknowledges the examiner's Notice of Intent to Issue Ex Parte Reexamination certificate "could arguably be construed as an adoption of NetAirus's misrepresentation," but argues that the examiner did not provide any express analysis regarding the proper construction of "configured to a PDA," and that the PTO applies the "broadest reasonable construction," instead of the "proper" construction that a court applies. *Id.* at 3. The PTO does use the "broadest reasonable" construction as an examination tool, *see Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367 (Fed. Cir. 2012), but Apple fails to explain how "configured to function as" is broader than, rather than different from, "connected to."

Throughout the original and reexamination proceedings, the PTO understood the term to have the meaning advanced here by NetAirus. Given the ambiguity in the claim language, that understanding weighs heavily in favor of adopting the construction advanced by NetAirus. The Court does so.

4.    <u>The Parties Do Not Present a Genuine Dispute about the Meaning of PDA</u>

NetAirus argues that a PDA is "a device for managing information, such as contacts, notes and schedules." Dkt. 280 at 6. Apple does not disagree. Apple's Responsive Br., Dkt. 289 at 2-3. Apple does object to any implication that a PDA is handheld: "[t]o the extent that NetAirus is attempting to argue, however, that a PDA is a handheld device, there is simply no support for this in the specification. *Id.* at 3. "Handheld" was not part of NetAirus's proposed construction, but Apple does not address the language of the specification. The specification states: "**PDAs are small handheld units** with a small LCD display, small key ad and touch pen." '380 Patent at 1:24-26. In accordance with the parties' agreement, the Court construes PDA to mean: "a device for managing personal information, such as contacts, notes, and schedules."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03257 JAK (Ex) | Date | February 25, 2013 |
|---|---|---|---|
| Title | NetAirus Technologies, LLC v. Apple, Inc. | | |

> 5.      Are The Claims Invalid Due to Lack of Written Description?

Apple argues that NetAirus's construction renders the claims invalid for lack of written description. Dkt. 281 at 12-13. As shown in the prior  discussion with respect to the specification,  it is difficult to locate a written description adequate to satisfy 35 U.S.C. § 112, ¶ 1 for the claim phrase as construed, and the PTO rejected the claims many times on that basis before allowing them. However, the patent carries a presumption of validity. 35 U.S.C. § 282. The PTO considered this exact issue during the original prosecution. And, in the recently-concluded reexamination initiated by Apple, the PTO understood the phrase to have the meaning advanced here by NetAirus. And, that understanding was not one that was casual or made in passing. Instead, the phrase became central to the reexamination, and the PTO required that it be included in each allowed claim.

Compliance with the written description requirement is a question of fact. *Ariad*, 598 F.3d at 1351. In light of the PTO's repeated and deliberate actions, a reasonable jury could find for NetAirus on that issue. Accordingly, the matter shall proceed to trial. The Court sets a scheduling conference for March 11, 2013 at 1:30 p.m., at which it will set dates for, *inter alia,* the Final Pre-Trial Conference and Trial. Counsel for the parties shall meet and confer prior to that conference, and on or before March 4, 2013 submit a joint statement containing their collective and respective views as to what, if any, pre-trial work remains and the date(s) by which any action(s) proposed by either or both parties can be completed.

**IT IS SO ORDERED.**

                                                                        :

                                                 Initials of Preparer    ak