**EXHIBIT 3**
**TO DECLARATION OF JOSEPH A. CULIG IN SUPPORT OF NETAIRUS' MOTION FOR A NEW TRIAL PURSUANT TO FED.R.CIV.P. 59**

1

```
              UNITED STATES DISTRICT COURT

              CENTRAL DISTRICT OF CALIFORNIA

                          ---

              THE HONORABLE JOHN A. KRONSTADT

              UNITED STATES DISTRICT JUDGE PRESIDING


  NetAirus Technologies, Inc.,       )
                                     )
                    Plaintiff,       )
                                     )
                                     )
  vs.                                )    CV10-3257-JAK
                                     )
                                     )
  Apple, Inc.,                       )
                                     )
                    Defendant.       )
  _____)




           REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS

                     Day 4 - P.M. Session

                    Los Angeles, California

                   Friday, November 15, 2013


  Pamela A. Batalo, CSR, FCRR, RMR
  Official Reporter
  Roybal Federal Building
  255 East Temple Street
  Room 181-I
  Los Angeles, California  90012
  (213) 687-0446
```

United States District Court, Central District of California

EXHIBIT 3 - PAGE 075

```
 1   APPEARANCES:
 2
 3    FOR PLAINTIFF:         NIRO, SCAVONE, HALLER & NIRO
 4                           BY:  DEAN D. NIRO
 5                                RAYMOND P. NIRO
 6                                TAHITI ARSULOWICZ
 7                                ROBERT A. CONLEY
 8                                JOSEPH A. CULIG
 9                           181 W. MADISON STREET, SUITE 4600
10                           CHICAGO, IL 60602
11
12                           ORUM & ROTH, LLC
13                           BY:  MARK D. ROTH
14                           53 W. JACKSON BOULEVARD, SUITE 620
15                           CHICAGO, IL  60604
16
17    FOR DEFENDANT:         MILBANK, TWEED, HADLEY & MCCLOY, LLP
18                           BY:  MARK C. SCARSI
19                                HANNAH CANNOM
20                                CHRIS L. HOLM
21                                ASHLEE N. LIN
22                           601 S. FIGUEROA STREET
23                           LOS ANGELES, CA 90017
24
25
```

United States District Court, Central District of California

EXHIBIT 3 - PAGE 076

```
                                                                    3
1    APPEARANCES CONTINUED:

2

3      FOR DEFENDANT:           MILBANK, TWEED, HADLEY & MCCLOY, LLP

4                               BY:  CHRISTOPHER J. GASPAR

5                               ONE CHASE MANHATTAN PLAZA

6                               NEW YORK, NY  10005

7

8                               JACKIE HARLOW

9                               IP LITIGATION COULSEL

10                              APPLE

11                              1 INFINITE LOOP

12                              MS 36-3NYJ

13                              CUPERTINO, CA  95014

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1          THE COURT:  Thank you.
2                     (Jury In)
3          THE COURT:  Please be seated.
4          Mr. Noellert, would you please restate your name.
5          THE WITNESS:  William Noellert.
6          THE COURT:  Do you understand that you remain under
7   oath?
8          THE WITNESS:  I do.
9          THE COURT:  Okay.  Please proceed, Mr. Conley.
10                    CROSS-EXAMINATION
11  BY MR. CONLEY:
12  Q.   Good afternoon, Mr. Noellert?
13  A.   Good afternoon.
14  Q.   During your testimony you made reference to something SJ
15  said.  Do you recall that testimony?
16  A.   Yes.
17  Q.   Who is SJ?
18  A.   Steve Jobs.
19  Q.   As an employee of Apple, did you generally embrace the
20  statements that were made by Steve Jobs?
21  A.   I don't really recall, but I guess I would say yes.
22  Q.   Do you ever recall Mr. Jobs making any statements about
23  borrowing ideas from others with respect to the design of the
24  iPhone technology?
25  A.   No, I don't.
```

1  Q.    Sure.  Let me maybe put up an exhibit that might help us.
2  This is exhibit -- this is DTX 727.  And we are looking at
3  page 29.
4  A.    Okay.
5        MR. SCARSI:  Excuse me, your Honor.  Just want to note
6  for the record that what we are looking at is a marked up copy
7  of the exhibit.
8        THE COURT:  Ladies and Gentlemen, I have discussed
9  this with you before.  It's highlighted and you will not be
10 getting the exhibit in the highlighted form.  Go ahead, please.
11 BY MR. CONLEY:
12 Q.    Do you recognize the information that appears on this page?
13 A.    I do, yes.
14 Q.    Do you see that towards the right of each graph there is
15 some highlighted areas; correct?
16 A.    I see those, yes.
17 Q.    What do those represent?
18 A.    Those represent the likelihood that the device would
19 transmit at those given power levels.
20 Q.    And the highlighted power levels are all above 15 dBms;
21 correct?
22 A.    It's a little difficult for me to see but I believe so,
23 yes.
24 Q.    Let me try to put up a demonstrative to make it a little
25 bit easier for you to see.  This is PDX 190.

```
1    A.    Okay.
2    Q.    Do you recognize the probability curve that appears on that
3    document?
4    A.    It looks similar, yes.
5    Q.    And in this demonstrative, are you able to see more easily
6    the data that is above 15-dBms on that graph?
7    A.    Yes.  It actually looks like you highlighted one that's
8    equal to 15 as well, but, yes, I see that.
9    Q.    And if you look at the pie chart to the right of that
10   figure, do you see the number 7.5 percent?
11   A.    I do, yes.
12   Q.    Do you have an understanding of what that would be
13   representative of based on this demonstrative?
14   A.    I would assume that would be the, you know, amount of -- if
15   you added up the times it was above 15.
16   Q.    I want to show you one other demonstrative, Mr. Noellert.
17   This is PDX 189.  Similar set of questions.  Do you recognize
18   the graph that appears in the left side of that figure as being
19   similar to the graph that we looked at on defendant's
20   Exhibit 727?
21   A.    I agree.  It's similar.
22   Q.    And again you see in the pie chart there is a number there,
23   2.4 percent.  Do you see that?
24   A.    I do see it.
25   Q.    What would that be indicative of?
```

```
 1  A.   Adding up likely all the bars you marked in red.
 2  Q.   Now, you testified about how you used your iPhone 4 when
 3  you owned that device; correct?
 4  A.   Yes.
 5  Q.   Would the probability curves that you see here apply to
 6  your own use of that device?
 7  A.   Likely, yes.
 8  Q.   And the same would be true with respect to any other user
 9  of an iPhone 4; correct?
10  A.   These curves are very general.  They would probably apply
11  to any phone.
12  Q.   Now, in your direct examination, you made reference to ten
13  thousand -- excuse me.  Ten million units of a device.  Do you
14  recall that?
15  A.   Yes.
16  Q.   Do you have any knowledge with respect to the number of
17  iPhone 4s that have been sold in the United States in the past
18  year?
19  A.   No, I don't know the number.
20  Q.   Would you be surprised to know that it's in the millions?
21  A.   No.  That would not surprise me.
22  Q.   Okay.  If we assume for a moment that in the order of ten
23  million units were sold, and that an average user, such as
24  yourself, sends 50 emails a day or 50 emails a month, pardon me,
25  over the Wi-Fi network, that would equate to about 600 emails
```

```
 1  per year by a user; correct?
 2  A.   Okay.
 3  Q.   And if I multiplied that by ten million units sold, it
 4  would be somewhere in the order of about six million -- pardon,
 5  six billion uses of email over Wi-Fi per year; correct?
 6  A.   I believe that's correct.
 7  Q.   Now, if I take that number of six billion emails per year
 8  and I apply that to the probability data that you see in
 9  plaintiff's demonstrative 189, doing the math, I believe it
10  comes out to about 1 hundred 44 million emails.  Is that
11  correct?
12  A.   That would assume all of the emails were sent over
13  cellular.
14  Q.   And the same would be true with respect to plaintiff's
15  demonstrative 190 except there we have a larger percentage so it
16  would be in the order of magnitude of about 4 hundred 50 million
17  emails per year, correct?
18  A.   I'll trust you on the number.  Many.
19       MR. CONLEY:  No further questions for this witness.
20       THE COURT:  Any redirect, Mr. Scarsi.
21       MR. SCARSI:  No, your Honor.
22       THE COURT:  Mr. Noellert, thank you for your
23  testimony.  You are excused.
24       Mr. Conley, Mr. Niro, would you call the next witness,
25  please.
```